```
            IN THE DISTRICT OF THE UNITED STATES OF AMERICA
                  FOR THE SOUTHERN DISTRICT OF ILLINOIS
_____

EMILY DOTEGOWSKI, by and              )
through MARYANN DOTEGOWSKI, as        )
next friend of EMILY                  )
DOTEGOWSKI,                           )
                                      )
              Plaintiff(s),           )
                                      )
     vs.                              )   Case 16-CV-432
                                      )   Lead Case 12-cv-52
ABBOTT LABORATORIES INC.,             )
                                      )
              Defendant(s).           )
_____   )
```

**TRIAL DAY 1**
(partial VOIR DIRE, Jury Questionnaire filled out)

BE IT REMEMBERED AND CERTIFIED that heretofore on **1/12/2018**, the same being one of the regular judicial days in and for the United States District Court for the Southern District of Illinois, **Honorable Nancy J. Rosenstengel**, United States District Judge, presiding, the following proceedings were recorded by mechanical stenography; transcript produced by computer.

**APPEARANCES**:

*FOR PLAINTIFFS:* **Christopher F. Cueto** of Law Office of Christopher Cueto, LTD, 7110 West Main Street, Belleville, IL 62223; and,

*FOR DEFENDANT*: **Stefan Mallen** of Bryan Cave - St. Louis, 211 North Broadway, One Metropolitan Square, Suite 3600, St. Louis, MO 63102; and,

*REPORTED BY*: **Molly N. Clayton**, **RPR**, **FCRR**, Official Reporter for United States District Court, SDIL, 750 Missouri Ave., East St. Louis, Illinois 62201, (618)482-9226,
*molly_clayton@ilsd.uscourts.gov*

```
 1                    INDEX OF WITNESS EXAMINATION
 2                                  DX        CX      R-DX      R-CX
 3   No witness testimony.
 4
 5
 6
 7                          INDEX OF EXHIBITS
 8   EXHIBIT              DESCRIPTION            Id'D      Rcv'd
 9   No exhibits identified or received.
10
11
12
13
14                            MISCELLANEOUS
15                                                      PAGE
16   Voir Dire                                           3
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | *COURTROOM DEPUTY:* The matter of *Dotegowski v. Abbott Laboratories, Inc.*, Case No. 16-cv-432, is called for Day 1 of the jury trial. Would the parties please identify themselves for the record. |
| 5 | *MR. CUETO:* Christopher Cueto on behalf of the plaintiff, your Honor. |
| 7 | *THE COURT:* Good afternoon, Mr. Cueto. |
| 8 | *MR. MALLEN:* Stefan Mallen on behalf of the defendant Abbott. |
| 10 | *THE COURT:* Good afternoon, Mr. Mallen. |
| 11 | The jury is here. They've completed their orientation and are on their way up. Is there anything we need to take up before they get here? |
| 14 | *MR. CUETO:* Nothing from the plaintiff, your Honor. |
| 15 | *MR. MALLEN:* Nothing from defendant, your Honor. |
| 16 | *THE COURT:* Okay. We will just wait for them to get here, then. |
| 18 | *(Recess)* |
| 19 | *THE COURT:* Good afternoon, ladies and gentlemen. Welcome to the Federal District Court. We are happy to have you here. You're here, you're settled, relax. I can't thank you enough for coming here and helping us out. And I know you didn't really have a choice, but I want to express how happy we are that you are here with us this afternoon. |
| 25 | So first I want to welcome you and then start with |

```
 1   just some introductions so you kind of know who everybody is
 2   and where -- what we're doing here today.  And I'll explain all
 3   of that to you.
 4           So my name is Nancy Rosenstengel.  I'm the judge
 5   assigned to preside over this case that you're going to hear a
 6   little bit about.  Here in front of me to my right is Deana
 7   Brinkley, my courtroom deputy clerk.  She is in charge of
 8   keeping track of my schedule and where to be and what to do and
 9   filings and all that.  We're all electronic these days, not a
10   lot of paper, but she keeps track of the calendar.
11           Next to Deana is Molly Clayton, my court reporter.
12   Molly is taking down everything that anyone says so that it can
13   be made a formal part of the record.  And Molly is so good it
14   actually comes up on my screen in what we call realtime, so if
15   I need to look back at it I can find it.
16           Now, over behind the computer is Jared Walsh.  He's
17   one of my law clerks.  He is a lawyer, a licensed attorney, and
18   his job is to help me with the law on the case and do any
19   research and help me to draft orders.  And next to Jared is
20   Gary Bathon, our court security officer.  You may see different
21   people wearing the same outfit that Gary is wearing around the
22   courthouse, but they are here to protect all of us and keep us
23   safe.  So if at any time you need anything at all, don't
24   hesitate to reach out to one of the Court security officers.
25           Now, we have counsel here to represent each side.  If
```

```
 1   you would just briefly introduce yourself, Mr. Cueto.
 2           MR. CUETO:  Certainly, your Honor.
 3           My name is Christopher Cueto.  I won't be presenting
 4   the case, but I'm here on behalf of the plaintiff.  So good
 5   afternoon, and it is wonderful to see you folks.
 6           THE COURT:  All right.  Thank you.
 7           And Mr. Mallen.
 8           MR. MALLEN:  Hi.  Stefan Mallen on behalf of the
 9   defendant Abbott Laboratories.  My co-counsel will be here next
10   week and they will be presenting much of the case, but I will
11   also be here in the courtroom.  So it's nice to meet you all
12   today.
13           THE COURT:  All right.  So this is a little unusual,
14   because normally we just bring in the jury and we ask you
15   questions and then we will go right into letting the lawyers
16   ask questions and pick the jury all in the same day.  But in
17   this case, we have a pretty detailed questionnaire that we want
18   you to complete that asks a lot of information.  That will save
19   time for the formal questioning.
20           As counsel just indicated, there will be different
21   lawyers here next week to ask questions.  The purpose of this
22   is just to give you a brief introduction, have you complete the
23   questionnaire today, and then come back next week, and the
24   lawyers will have an opportunity to ask you any questions, any
25   follow-up.
```

1  So, as I said, that will save time. So today the
2  questionnaire that you complete, I ask you to be very careful
3  and thorough in completing that, and then that cuts the
4  questioning down.
5  Now, the importance and why we had to have you come in
6  is that you will take an oath and promise to tell the truth in
7  all of your answers, both that you give here in open court and
8  that you give on the questionnaire. So it's very important
9  that you answer everything truthfully. And we couldn't just,
10 say, mail it to you or anything because I want to stress the
11 importance that you are under oath. And then, of course, I'll
12 have some instructions to give you before you leave today, too.
13 So the next thing we need to do is Deana, if you would
14 please administer the oath to our panel.
15  *COURTROOM DEPUTY:* Please raise your right-hands.
16  *(Venire Sworn)*
17  *THE COURT:* All right. So I want to explain a little
18 bit about why we do this, why we ask you the questions that are
19 asked on the questionnaire, why we're going to ask you
20 questions in Court. It's just so that we can find out a little
21 bit about you. You might think of it like a job interview. If
22 you owned a business and you were hiring someone to watch over
23 your business, you want to know something about the person you
24 put in charge. So we don't ever mean to pry about anything,
25 and I urge you that if there's anything you'd rather not

```
 1   disclose on the questionnaire or in open court, just say that
 2   you would prefer to discuss in private, and then when you come
 3   back next week, we'll pull you to the side with just the
 4   lawyers, not in front of everyone else, and we can talk about
 5   it.
 6            The information that you give on the questionnaire is
 7   only shared with the lawyers and with me.  And at the end of
 8   the case that will be destroyed, and it's not ever made a part
 9   of the record.  So you don't have to worry about that.
10            Another thing we do to protect your privacy -- and
11   it's sometimes awkward and I don't really like it, but we will
12   refer to you by the number that's on your badge there.  And the
13   reason why we do that is because now, the days with everything
14   electronic, everything becomes a part of the public record, and
15   we don't want to have your name in the record, as you probably
16   don't either.  So we'll always refer to you by number, and the
17   lawyers are encouraged to do that, too.
18            And I also, before I forget, want to say that the
19   lawyers -- and you'll meet the additional lawyers next week.
20   But they won't -- they can't talk to you.  So if you run into
21   them in the hall or the restroom or the vending room and they
22   don't speak to you, they're not being rude; it's just that it
23   wouldn't look right, even if you were only talking about where
24   can I buy a Coke or something, for them to be seen talking to
25   you.  So I always want to explain that.
```

1    Now, this case that you are called here on is a civil
2 case.  So that means it's a dispute between parties.  Here, an
3 individual and a corporation.  The important thing for you to
4 know is that it is not a criminal case.  That means you are not
5 going to be asked to decide whether someone committed a crime,
6 whether someone's guilty of a crime that they've been charged
7 with.  It's a civil case seeking damages.
8    So I'm going to read a prepared description of the
9 case so that you know a little bit about the case that you've
10 been called here to answer questions about.
11   This is a personal injury lawsuit involving the
12 prescription medication Depakote, manufactured, marketed, and
13 sold by Abbott Laboratories.  Depakote is prescribed for the
14 treatment of certain aspects of bipolar disorder.
15   Plaintiffs claim that Emily Dotegowski's mother,
16 Maryann Dotegowski, was prescribed Depakote and became pregnant
17 with Emily while taking Depakote.  Plaintiffs claim that
18 plaintiff Emily Dotegowski was born with birth defects as a
19 result of being exposed to Depakote in the womb.  Plaintiffs
20 claim that Abbott failed to provide an adequate warning to
21 Maryann Dotegowski -- Maryann Dotegowski's prescribing
22 physician regarding the risks of Depakote.  Plaintiffs seek
23 recovery of damages from Abbott for the injuries and harm
24 suffered by Emily Dotegowski in connection with her birth
25 defects.

1        Abbott claims that it adequately warned Maryann
2   Dotegowski's physician about the risks of Depakote during
3   pregnancy.  Abbott also claims that plaintiff cannot prove that
4   the content of the warning caused Emily Dotegowski's injuries.
5   Abbott further claims that plaintiff cannot prove that Emily
6   Dotegowski's injuries were caused by Depakote.  Finally, Abbott
7   claims that plaintiff cannot prove sustained damages to the
8   extent claimed.
9        So that is a brief overview of what the case is about.
10  You will hear more about that next week.
11       Now, I also want to encourage you not to worry at all
12  about the law.  Your job, if you are selected as a juror, is to
13  decide the facts.  My job is to decide what the law is and to
14  tell you what that is.  I'll explain the law to you and you
15  will apply that law to the facts.  So don't worry at all about
16  whether you think you would know what the law is on this.  You
17  will be told what the law is.  The jury's job is just to decide
18  what the facts are.
19       So I want to tell you a little bit about the timeline.
20       So you're here today to complete the questionnaire.
21  And then, because I have -- Monday is a holiday and I have a
22  commitment on Tuesday, we're going to come back on Wednesday
23  morning to do the formal jury selection process.
24       So we'll start Wednesday morning.  This will be a
25  little bit longer than usual trial, but not as long as some.

```
 1   We are going to go -- I think we will be finished by
 2   February 2nd, so that would be three days next week, all week
 3   the next week, and potentially the entire week the next week.
 4   So I just want to give you the head's up with that.  If that's
 5   a problem for anyone, if you have, say, a medical procedure, a
 6   deposit paid on a vacation, you're getting married, something
 7   like that, note that on your questionnaire and we'll take that
 8   up on Wednesday.
 9          So the only thing I really want to talk about right
10   now is if anyone has a conflict that you know, a serious
11   conflict of like what I talked about, that would make it
12   impossible for you to return to be with us on Wednesday.  So
13   that's Wednesday the 17th.
14          I don't see any hands.
15          Okay.  Hang on for Deana to bring you the microphone.
16   And if you would just tell me the number on your badge.
17          VENIRE NO. 28:  No. 28.
18          THE COURT:  28, okay.
19          VENIRE NO. 28:  I am the sole provider for my family,
20   and it's hard for me to get out of work like that to keep
21   coming back to court.
22          THE COURT:  Okay.  Where do you work?
23          VENIRE NO. 28:  Jack in the Box in Grant.
24          THE COURT:  Okay.  All right.  Thank you.
25          Anyone else think you couldn't be with us on
```

1  Wednesday?
2              *(No audible response)*
3       THE COURT: Okay. Now -- so speaking of that, if
4  we -- if you are selected to be on the jury, I like to start at
5  8:30 in the morning, and then we always try to finish by 5.
6  Usually I start looking at finishing around 4:30, but sometimes
7  we just have to wrap up a witness or something like that. So
8  definitely finishing between 4:30 and 5, and that's taking just
9  a short lunch break, about 30 minutes. We will actually be
10 providing lunch so that we can take a short break, because
11 otherwise, we need to break for over an hour and that would
12 extend the trial by several days, probably. So starting about
13 8:30, ending 4:30 or 5 with a short lunch break.
14      Does that present a problem for anyone? Childcare
15 concerns? Anything that would make that schedule impossible
16 for you?
17             *(No audible response)*
18      THE COURT: Okay. That's great to hear.
19      And, as I said, we'll be providing lunch, but if
20 you're selected, we do have a refrigerator and a microwave, so
21 if for some reason, if you have special dietary needs or you
22 just prefer to bring your own food or something like that, that
23 is available.
24      Now, the other thing that I want to stress is that
25 between now and Wednesday -- and I'll give you this warning

```
 1   over and over and over again -- you cannot conduct any
 2   independent research about anything.  So nowadays -- you know,
 3   I think my kids look up everything on Google.  You can't do
 4   that.  You can't do any independent research about anything.
 5   And then along with that -- and I'll give you this instruction
 6   over and over again too, but you can't be on social media.
 7           So if you're selected to be a juror, you're going to
 8   have to give it up.  That's harder for some than others.
 9   Personally it doesn't bother me at all, but I think if I
10   took -- I have three teenagers.  I think if I took their phones
11   away and said you can't be on social media for two weeks, they
12   would -- all their hair would probably fall out, so -- and I'm
13   not saying you can't be at all during that time, but just while
14   you're sitting on the jury, you can't be Tweeting hey, I'm on a
15   jury in Federal Court or I got picked for this or whatever.
16   You can't be on social media about the case.  And I'll explain
17   that more in detail next week.  And, again, I'll give you
18   basically an instruction that you can't do it.  I'm giving you
19   that now and will repeatedly.  There can be very serious
20   consequences for that, so keep that in mind.
21           So one thing I always ask a jury and I thought I might
22   as well ask this today, even before you complete the
23   questionnaire:  First, does anybody recognize any of their
24   fellow jurors?  Anybody on the panel see anybody that they
25   recognize?
```

```
 1                Okay.  No. 1 here.
 2                VENIRE NO. 1:  You mean somebody out here?
 3                THE COURT:  Yes.
 4                VENIRE NO. 1:  Do you want me to say who?
 5                THE COURT:  Yes.  Which number?
 6                VENIRE NO. 1:  Oh.  What's your number?
 7                VENIRE NO. 25:  25.
 8                VENIRE NO. 1:  No. 25.
 9                THE COURT:  Okay.  No. 1 recognizes No. 25.
10           And how do you know No. 25?
11                VENIRE NO. 1:  She's my son teacher.
12                THE COURT:  Oh, okay.  What school is your son at?
13                VENIRE NO. 1:  Vivian Adams Early Childhood Center.
14                THE COURT:  Okay.  Well, now, the fact that you know
15   each other -- I'll ask you first.  Do you think that that
16   would -- say you were on the jury together.  Would that be
17   difficult for --
18                VENIRE NO. 1:  No.
19                THE COURT:  -- for you for any reason?
20                VENIRE NO. 1:  No.
21                THE COURT:  And you could, of course, talk about
22   school and your son, but you can't talk about the case.
23                VENIRE NO. 1:  Right.
24                THE COURT:  You understand that?
25                VENIRE NO. 1:  Yes.
```

```
1              THE COURT:  Okay.  So same -- No. 25, can you -- would
2     that -- do you understand that while you might want to talk to
3     her about how wonderful her son is or how he needs to improve,
4     you can't talk about the case?  Would that cause any problem
5     for you?
6              VENIRE NO. 25:  No.
7              THE COURT:  All right.  Thank you.
8              Anyone else recognize anyone?
9              No. 23?
10             VENIRE NO. 23:  Hello.  Yes, 23.  I know No. 18 from
11    high school.
12             THE COURT:  Did you go to high school together?
13             VENIRE NO. 23:  Yes.
14             THE COURT:  Okay.  Would that present any problem for
15    you?
16             VENIRE NO. 23:  No.
17             THE COURT:  Thank you for letting me know.
18             Same for you, No. 18?
19             VENIRE NO. 18:  No.
20             THE COURT:  Do the two of you keep in touch still
21    since high school?
22             VENIRE NO. 23:  No.
23             THE COURT:  Same for you, No. 18?
24             VENIRE NO. 18:  No.
25             THE COURT:  All right.  Anyone else?
```

```
 1              Okay.  So then the other question I ask, does anyone
 2    know anyone who works in the building, and I have to start by
 3    saying I recognize one of our potential jurors.  No. 6 is my
 4    not-so-long-ago former neighbor and a friend of mine.
 5              VENIRE NO. 6:  Hello.
 6              THE COURT:  Mr. M*****n, do you think it would present
 7    any problem for you if you were selected on this, in that we
 8    know each other and our children know each other?
 9              VENIRE NO. 6:  Well, everybody knows each other.
10              THE COURT:  It is a small community.
11              VENIRE NO. 6:  It is a small community.  I don't think
12    so, no.  No, your Honor.
13              THE COURT:  Okay.  And obviously, you and I wouldn't
14    talk about the case or anything like that.  You understand
15    that?
16              VENIRE NO. 6:  Agreed.
17              THE COURT:  Yes.  Okay.
18              So I don't recognize anyone else.  Does anyone else
19    recognize anyone in the courtroom or know anybody who works
20    here in the Federal Court?
21                        (No audible response)
22              THE COURT:  Okay.  So, again, as I said, the
23    questionnaire that you will be asked to complete is very
24    detailed, so please take your time and don't rush through it.
25    And, again, if there's anything you want to discuss privately,
```

1  be sure to just note that on the questionnaire.  If you have a
2  question about anything on there, ask the jury administrator.
3  And if she can't answer the question, she'll call up and ask
4  me.
5  　　　　　And then one of the things I always ask when picking a
6  jury is at the end, if, after we've asked all the questions --
7  and you'll have an opportunity to do this on Wednesday, but
8  after we've asked all the questions, if there's something that
9  you are thinking wow, I can't believe that they didn't ask me
10 this, something I think that they should know or if I was
11 selecting a jury, something that I would want to know, then you
12 can note that on the questionnaire, too, if there is something
13 else that you think we ought to know.
14 　　　　　So on Wednesday I want to be here and ready to go at
15 9:00.  Did Denise say -- are they going to come in at 8:30?
16 　　　　　*COURTROOM DEPUTY:*  They will go to the jury room.
17 　　　　　*THE COURT:*  So Denise will tell you -- the jury
18 administrator will tell you, but I want everyone up here and
19 ready to go at 9:00.  So I think she'll have you come before,
20 because she may have paperwork or something to do.  I expect we
21 will know who is on our jury by the middle of the day on
22 Wednesday.  So I would assume that you are going to be picked.
23 So whatever arrangements you need to make between now and then
24 to talk to your employer, your family, et cetera.  If you are
25 not picked, then you will go back to the jury administrator and

```
 1   she'll give you instructions.  If you are picked, we are going
 2   to proceed right into opening statements and get the trial
 3   underway.  So, as I said, just be prepared to be here all day,
 4   and if you are picked, we will go right ahead with the trial.
 5           So now I'm going to read you that social media
 6   instruction that I talked about.  You will hear this over and
 7   over again, but I can't express the importance.  There's been
 8   too many times where a lot of work has gone to waste because
 9   jurors used social media or had inappropriate contact or
10   outside research on a case.
11           So until the trial is over, you are not to discuss
12   this case with anyone, including your fellow jurors, members of
13   your family, people involved in the trial or anyone else.  You
14   may not communicate with anyone about the case on your cell
15   phone, BlackBerry, iPhone, text messaging, Twitter or through
16   any blog or website, through any internet chat room, or by way
17   of any other social networking website, including Facebook,
18   Instagram, SnapChat, and YouTube.  If anyone approaches you and
19   tries to talk to you about the case, do not tell your fellow
20   jurors, but advise me about it immediately.  Do not read or
21   listen to any news reports on the trial.  And remember to keep
22   an open mind until all the evidence has been
23           COURTROOM DEPUTY:  Now, I may not remind you of this
24   every time we take a break.  Today we are going to break here
25   in a few minutes or when you come back next week, but keep it
```

1  in mind.  Obviously, you can tell your family I'm coming back
2  Wednesday, I may be selected.  The importance is you can't do
3  any independent research, you can't get on social media, and
4  you can't talk to anyone about the case.
5              Does anyone have any questions about that?
6                     *(No audible response)*
7         *THE COURT:*  Okay.  Well, we will excuse you to go back
8  downstairs.  Just take your time completing it.  Turn it in to
9  the jury administrator, and then we will see you Wednesday
10 morning and ready to go, with the lawyers asking you some
11 questions.
12             So thank you again for coming in.  We appreciate your
13 time.  And we pride ourselves here in Federal Court on making
14 good use of your time.  It's not like a situation you may have
15 experienced in state court where you will be sitting around
16 doing nothing for long periods of time.  We're going to get you
17 in this afternoon, get that questionnaire completed, and then
18 move forward on Wednesday morning.
19             So have a great weekend, everyone, and I'll see you
20 Wednesday morning.  And so you are to now go straight back down
21 to the jury assembly room and complete the questionnaire.
22             All rise for the jury.
23      *(Following proceedings held outside presence of jury:)*
24        *THE COURT:*  All right.  I guess the only thing, I want
25 to get your thoughts on Juror No. 28, who said it's a problem

```
 1   for her to take off work.
 2           MR. CUETO:  You know, your Honor, I'm very
 3   sympathetic -- well, I guess I don't have to identify myself.
 4   I'm so used to talking on the phone the few times I get to
 5   speak.
 6           Your Honor, I'm very sympathetic to her position, but
 7   I don't think that's enough of a hardship, frankly, to excuse
 8   her.
 9           THE COURT:  Mr. Mallen?
10           MR. MALLEN:  Yeah.  At this time I think we probably
11   should have her fill out the questionnaire and see what she
12   says in there and revisit this Wednesday morning.
13           THE COURT:  Well, that was my thought, because we're
14   just asking -- she said keep coming back.  Well, just one more
15   time and -- but then take it up and see what the real problem
16   is.
17           MR. CUETO:  Thank you, Judge.
18           THE COURT:  Anything else you want to take up this
19   afternoon?
20           MR. CUETO:  No, your Honor.
21           MR. MALLEN:  Just two things really quick.  You're
22   still expecting to do openings Wednesday afternoon?
23           THE COURT:  Yes, sir.
24           MR. MALLEN:  And three peremptories per side?
25           THE COURT:  Yes, sir.  And I'm going to pick 12, just
```

because cold and flu season and it's gone through my chambers, so who knows where it might land. So I would just hate to get very far along and have -- not have six.

Okay. Well, have a good weekend, and I'll see you all on Wednesday.

*(Court adjourned)*

-oOo-

REPORTER'S CERTIFICATE

I, Molly N. Clayton, RPR, FCRR, Official Court Reporter for the U.S. District Court, Southern District of Illinois, do hereby certify that I reported with mechanical stenography the proceedings contained in pages 1 - 21; and that the same is a full, true, correct and complete transcript from the record of proceedings in the above-entitled matter.

DATED this 12th day of January, 2018.

*s/Molly Clayton, RPR, FCRR*